IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KATHY BROWN, and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 3:12-00788 ) Chief Judge Haynes |
| v. | ) ) |
| CONSOLIDATED RESTAURANT OPERATIONS, INC., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

Plaintiff, Kathy Brown, filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against the Defendant Consolidated Restaurant Operations, Inc. Plaintiff asserts FLSA claims for herself and on behalf of Defendant's non-exempt hourly employees arising out of the Defendant's uniform policy. Plaintiff alleges that the Defendant's uniform policy requires its employees to purchase and to maintain their work uniforms at the employee's expense. Plaintiff also alleges that these work uniforms must be purchased from the Defendant and such purchases and cleaning costs result in the Defendant's failure to pay Plaintiff and its non-exempt hourly employees the minimum wages required by the FLSA.

Before the Court is Plaintiff's motion to certify this action as a collective action under 29 U.S.C. § 216(b) for the Defendant's current and former employees for the last three years. (Docket Entry No. 12). Plaintiff also seeks an order that the Defendant immediately provide Plaintiff's counsel with a list of names, last known addresses, and telephone numbers of its non-exempt hourly employees who are or were subject to Defendant's uniform policy for the

three year period prior to the filing of this action. Plaintiff also requests that the Court approve her proposed notice of this action and consent form to all such employees and require the posting of the notice at Defendant's restaurants and distribution of the notice with Defendant's current non-exempt hourly employees' paychecks. Plaintiff contends such a notice is required to enable current and/or former employees to consent or "opt-in" to this action as a named plaintiff.

In its opposition, that is supported by several affidavits, the Defendant contends that it manages restaurants that operate under multiple trade names and that its brand restaurants are owned and operated by others. Defendant asserts that the uniform policy is determined by its restaurant owners and varies in that there are different uniforms for some categories of employees. The Defendant asserts that its employees may purchase the uniform clothes at another retail store and the uniform prices are below retail prices.

For the reasons set forth below, the Court concludes that the parties' proof supports a common theory of FLSA liability for the Defendant's uniform policy that governs the Defendant's brand restaurants. This common theory is whether this uniform policy has the effect of denying Plaintiff and the Defendant's other similarly situated non-exempt hourly employees the minimum hourly wage required by the FLSA.

## A. Review of the Motion

Plaintiff worked as a non-exempt hourly employee at an El Chico restaurant in Nashville, Tennessee from January 31, 2003 until June 15, 2012. (Docket Entry No. 13-3, Plaintiff's Affidavit at ¶¶ 1-3). Although Plaintiff asserts that the Defendant owns and operates this El Chico restaurant, id. at ¶ 2, the Defendant asserts that its restaurants are owned by others and it does not employ restaurant workers. (Docket Entry No. 37-2, Lamm Declaration at ¶ 4).

According to Plaintiff's affidavit, the Defendant required her to purchase and launder her work uniform at her expense without reimbursement. (Docket Entry No. 13-3, Plaintiff's Affidavit at ¶ 5). Plaintiff describes the Defendant's work uniform as: a white oxford cloth shirt, black "safety shoes," black socks, and black slacks. Id. In the last years of her employment,[1] Plaintiff asserts that the Defendant changed its uniform policy as to the type of uniform shirts and required Plaintiff and other employees to purchase these shirts from the Defendant. Id. at ¶ 6. Plaintiff asserts that the effect of these uniform expenses was to reduce Plaintiff's and other hourly employees' wages below the minimum wages required by 29 U.S.C. § 206. Id. at ¶ 7.

According to Mark Lamm, Defendant's president and chief operating officer, the Defendant is a "restaurant services company" in Dallas, Texas that has 115 restaurants under eight different trade names, but the restaurants are owned and operated by different entities or franchisees.[2] Each restaurant brand caters to different clientele and differs in employee work attire and positions. Id. at ¶¶ 6- 8. Collectively, these restaurants employ 4300 workers that

---

[1]The Defendant states that Plaintiff was terminated after a customer's complaint that Plaintiff harassed a co-worker and referred to her co-worker by the "n" word. (Docket Entry No. 37-4, Gerlach Affidavit at ¶ 3). Plaintiff also allegedly told a customer that "Mexicans were all illegals and they needed to go back to Mexico and stop taking jobs from her." Id. at ¶ 3. If true,these assertions would be legitimate business reasons to terminate an employee, but such assertions are not relevant to Plaintiff's FLSA claims nor the certification issue.

[2] In earlier proceedings, the Court denied the motion for a partial dismissap filed by Defendant and El Chico Restaurants of America Inc, citing Plaintiff's arbitration agreement. (Docket Entry No. 36). Despite the length of these proceedings, the Defendant has not challenged by motion that the Defendant is not Plaintiff's employer under the FLSA. The FLSA extends the definition of employer to include an "enterprise" composed of different entities that have a "unified operation or common control and common business purposes" with "aggregate management services" Brennan v. Arnheim & Neely, Inc. , 410 U. S. 512, 520-21 (1973) (management company for several independent entities held to constitute an enterprise for FLSA liability) See also Marshall v. Shan-An-Dan, Inc. 747 F.2d. 1084, 1087-89 (6th Cir. 1984).

include employees who are tipped employees whose wage is $2.13 per hour plus tips. Id. at ¶ 5. At a Nashville El Chico, only kitchen employees who do not share in tips, receive a wage above the minimum wage. (Docket Entry No. 37-5, Gerlach Declaration at ¶ 4).

As examples of its other restaurants, Defendant cites its Lucky's restaurants, whose dress code for front of the house employees differs from its bartenders and servers whose dress differs from its bussers and hostesses at those restaurants. (Docket Entry No. 37-2, Lamm Declaration at ¶ 9). Employees at Defendant's Lucky's restaurant wear logoed T-shirts that the owner provides. Id. at ¶ 8, but this affidavit is silent on who bears the cleaning costs. At the Defendant's III Forks restaurants, each server is provided a tuxedo jacket, ties, white shirts and pants, but the bar server wears a III Forks shirt. Id. at ¶¶ 8-9. The affidavit is silent as to who bears the cleaning costs of these items at III Forks. At the Defendant's Good Eats restaurants, the seating employees wear an all black outfit of their choosing and the servers wear a polo shirt and black pants. Id. For the Cool River and Silver Fox restaurants, steak houses, servers receive two vests and aprons without charge, Id. at ¶ 10, but the record is again silent about other employee uniform requirements at those restaurants and who bears the cleaning costs.

Don Dungy, president of El Chico Inc. states that El Chico of America, Inc., its subsidiary, owns fifty-nine (59) El Chico restaurants, including 21 franchise locations, in nine (9) states as well as in Saudi Arabia, Egypt, and the United Arab Emirates. (Docket Entry No. 37-3, Dungy Declaration at ¶ 3). El Chico of America owns and operates the El Chico restaurant where Plaintiff worked on Murfreesboro Road in Nashville. Id. at ¶ 2. Each El Chico restaurant has between 22 to 99 non-exempt employees who are paid either an hourly rate above the minimum wage or $2.13 per hour plus tips under Section 203(m) of the FLSA. Id. at ¶ 4.

Defendant asserts that these uniforms are not sold at a profit. Id. at ¶ 8. Defendant notes that these shirts can be worn by employees outside of the restaurant. Id. at ¶ 7. The new uniform is a short sleeve shirt with a pin point collar in designed colors that can be purchased from the Defendant at $15 per shirt. Id.

At the Defendants's El Chico restaurants, an El Chico hostess must wear all black, professional attire of his or her choice with closed toe shoes with non-skid soles. (Docket Entry No. 37-5, Gerlach Declaration at ¶ 10). Non-exempt El Chico servers wear black dress pants or skirts of their choosing Id. ¶ 8. If the pants have belt loops, El Chico servers wear a leather (or leather-like) belt. El Chico bartenders must wear black dress pants or skirts with a leather or leather-like belt for any loops. Id. at ¶ 7. Bartenders must wear a black professional looking shirt of their choosing and any colored shirt of similar style. Id. Bartenders' shoes must be closed toe with nonskid soles. Id.

Since the summer of 2010, servers wear solid colored short sleeved shirts without any El Chico logos. (Docket Entry No. 37-3, Dungy Declaration ¶ 8). El Chico servers and bartenders, if they choose, can purchase Port Authority brand shirts in the colors of Maui Blue, Court Green, Gold or Hibiscus directly from El Chico at "cost" that is $17 per shirt. Id. Defendant asserts that these same shirts can be purchased from online retailers subject to management's approval, but many employees elected to purchase these shirts from the restaurant. (Docket Entry No. 37-9, Bratton Declaration at ¶ 3). For safety reasons, El Chico servers must wear black leather or leather like shoes with a closed toe and non-skid soles. (Docket Entry No.37-3, Dungy Declaration at ¶ 9).

El Chico provides logoed aprons, t-shirts and manager shirts without charge and provides some cooks with aprons that must be cleaned daily. Id. at ¶7. The affidavit is silent on who bears the expense of the daily cleaning. Id. El Chico kitchen staff employees may wear any work appropriate t-shirt and black slacks or jeans. Id. at ¶ 6. El Chico bussers must wear black golf or polo style shirts, with black slacks, a black belt for any loops, and closed toe and non-skid shoes. (Docket Entry No. 37-12, Arias Declaration a ¶ 6). Kitchen employee shoes must be closed toe with non-skid soles. Id. El Chico aprons are provided without cost, if they are destroyed or damaged. (Docket Entry No. 37-5, Gerlach Declaration at ¶ 9).

El Chico employees clothing may be washable or laundered, but must be wrinkle free (Docket Entry No. 37-3, Dungy Declaration at ¶ 10). The Defendant does not specify a cleaning method for work attire, (Docket Entry No.37-2, Lamm Declaration at ¶ 11) so as long as the employee's work attire is clean and wrinkle free when the shift starts. Id. El Chico "front of the house" employees must wear clean and pressed clothing. (Docket Entry No. 37-5, Gerlach Declaration at ¶¶ 7, 9, 10). Defendant asserts that its employees use a variety of cleaning methods for their clothes. (Docket Entry No. 37-8 Millan Declaration at ¶ 5). Defendant asserts that El Chico does not dictate cleaning methods Id.

Plaintiff responds that within the last couple of years, employee uniforms had to be purchased from the Defendant. (Docket Entry No. 41-1 at ¶3). Plaintiff insists that with this uniform change, the Defendant never informed her that she could purchase a uniform shirt elsewhere. Id. at ¶ 4. Plaintiff asserts that the Defendant maintained a chart for each employee to list his or her size and quantity of shirts. Id. Plaintiff ordered two uniform shirts, but due to supply limits, Defendant provided Plaintiff a yellow shirt that was her size. Id. ¶¶ 4-5. Plaintiff

states that she never wore her uniform outside of work and her uniform was washed daily. Id. at ¶ ¶ 6-7. Plaintiff asserts that she had to wash her uniform separately from her other garments to meet Defendant's cleanliness standards and this uniform washing required 1-1½ hours per week. Id. ¶ ¶ 7-8. Several employees who had various positions at an El Chico restaurant describe their purchases and/or maintenance of their work uniforms. (See Docket Entry Nos. 37-6 through 37-12).

## B. Conclusions of Law

### 1. Conditional Certification

Under 29 U.S.C § 216(b), an employee may file a FLSA action and seek certification as a collective action to enable comparable employees to join the action:

> Any employer who violates [the minimum wage and maximum hours provisions] of this title shall be liable to the employee or employees affected . . . **An action to recover [for such liability] may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.** No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id. (emphasis added)

"[T]he collective action serves an important remedial purpose. Through it, a plaintiff who has suffered only a small monetary harm can join a larger pool of similarly situated plaintiffs. That pool can attract effective counsel who knows that if the plaintiffs prevail, counsel is entitled to a statutorily required reasonable fee as determined by the court." O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 586 (6th Cir. 2009) (citing Hofman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989)). Historically, courts deemed "[t]he evident purpose of the Act [FLSA] is to provide one lawsuit in which the claims of different employees, different in amount but all

arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." Shain v. Armour & Co., 40 F. Supp. 488, 490 (W.D. Ky. 1941).

Under Section 216(b), for collective actions, there are two certifications: "conditional certification" during the initial stages of the proceeding and "final certification" after all opt-ins join and discovery is concluded. Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546-547 (6th Cir. 2006). The evidentiary standard for "conditional certification" is that plaintiff's showing "need only be based on a modest factual showing" that other employees are similarly situated to warrant certification. Id. at 547 (internal quotations omitted). The Sixth Circuit referred to this conditional certification standard as "fairly lenient" and "typically results in...certification". Id. As the Western District of Tennessee observed, under Section 216(b) for conditional certification, the FLSA plaintiff must "establish through evidence at least a 'colorable basis' for [her] claim that the class of putative plaintiffs exists and the class members are similarly situated." Bearden v. AAA Auto Club South, Inc., 2013 WL 1181474 at *2 (W.D. Tenn. March 18, 2013). In contrast, final certification sets a "stricter standard" Id. For final certification, Plaintiff must produce "more than just allegations and affidavits" to establish that other employees are similarly situated for certification. Frye v. Baptist Memorial , Hosp., 495 Fed. Appx. 669, 671 (6th Cir. 2012) (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2003)).

As to the similarity of Plaintiff to the Defendant's other non-exempt hourly employees, in Barvinchak v. Ind. Reg'l Med. Ctr., 2008 WL 1847163 (W.D. Pa. Apr. 23, 2008), a former employee challenged his former employer's uniform purchase policy as a FLSA violation. There,

8

the District Court provided an example of such policy's effect on the employee's minimum wage. "If minimum wage is assumed to be $5 an hour and if one works 8 hours a day for five days a week, that person would earn $200 for the workweek. Now, if one assumes that a person needing to buy a uniform pays for a uniform in that workweek, a violation of FLSA certainly exists even if the uniform was $1 because the wage of the worker dips below the minimum wage after that $1 expense." Id. at *5. That Court then cited the general rule that "if an employer requires its employees to wear uniforms, then the cost of the uniforms cannot be imposed upon the employees if it would reduce the employee's wage below the minimum standard." Id. In Barvinchak , the District Court also cited a Wage and Hour Division opinion letter. Id. at *4. This opinion letter states, in relevant part, that "an employer may not lawfully require an employee to pay for an expense of the employer's business if doing so reduces the employee's pay below any statutorily-required minimum wage or overtime premium pay." Opinion Letter Fair Labor Standards Act (FLSA), FLSA 2001-7, 2001 WL 1558768 (February 16, 2001).

Here, Plaintiff's affidavits establish that she was an hourly non-exempt employee of the Defendant and was required, as a condition of her employment with the Defendant, to purchase her work uniforms from the Defendant and to launder those uniforms daily at her personal expense for 1 to 1 1/2 hours per week. (Docket Entry No. 41-1). During the last couple of years, Plaintiff asserts others similarly situated were required to purchase their uniform shirt directly from Defendant for fifteen dollars ($15.00) per shirt. Id. The Defendant submitted affidavits of the employees at El Chico restaurants that reflect some factual variations about uniforms, but in large measure, these employees' affidavits corroborate the existence of this uniform policy and practice. The affidavits of executives submitted by the Defendants describe

differences in restaurants and employee uniforms at those restaurants, but also concede the existence of this uniform practice at the restaurants managed by the Defendant.

The Court concludes that the parties' proof establishes the existence of a uniform policy that could have the effect of reducing non exempt hourly employee's right to the FLSA minimum wage for their positions. This policy and/or practice is that non-exempt hourly employees at the Defendant's restaurants must purchase and launder their uniforms at the employees' personal expense. To be sure, the Defendant's affidavits identify some variations in the policy and who implements the policy, but under the precedents cited and the Wage and Hour Division's Opinion letter, the Court concludes that the Defendant's restaurants' failures to reimburse their employees for these uniform expenses could reduce those employees' wages below the federal minimum wage required by 29 U.S.C. § 206 and thereby create a class of similarly situated employees to Plaintiff.

As to the cited factual variations, the Court concludes that this action still presents FLSA wage "claims [that are] unified by common theories of defendants' statutory violations." In O'Brien, the plaintiffs brought two claims under the FLSA that employees were required to work "off the clock" and that the defendants electronically edited employee time records. 575 F.3d at 573. The Sixth Circuit explained that common theory of FSLA liability is sufficient for conditional certification of a collective FLSA action.

> But in this case, **the plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.** The claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time sheets.

Id. at 585. Accordingly, the Sixth Circuit held that collective action status under the FLSA, is proper where "claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id. As applied here, the Court concludes that Plaintiff's common theory of FLSA liability arising out of the Defendant's uniform policy is sufficient showing for conditional certification under Section 216(b).

In O'Brien, the Sixth Circuit also rejected the existence of individualized issues as barring certification of a FLSA action. The Sixth Circuit ruled that the predominance of individual issues under Fed. R. Civ. P 23, is inapplicable to a FLSA action.

> Under the FLSA, opt-in plaintiffs only need to be "similarly situated." **While Congress could have imported the more stringent criteria for class certification under Fed.R.Civ.P. 23, it has not done so... The district court implicitly and improperly applied a Rule 23-type analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated.**

Id. at 584-85 (internal citations omitted) (emphasis added).

For these reasons, the Court concludes that Plaintiff's motion for conditional certification should be granted.

## 2. Notices

Plaintiff requests the Court to approve her proposed Notice and Consent form (Docket Entry Nos. 13-1 and 13-2) for distribution to the Defendant's current and former employees for three years prior to the filing of this action. Plaintiff proposes that the notice and consent forms be mailed by Plaintiff's counsel by first class mail to all non-exempt hourly employees of Defendant who were subject to Defendant's uniform policy within the last three years. Any current or former employee would be required to file his or her consent with the Court within 90

days of the mailing under Plaintiff's proposal for court approved notice and consent forms. Plaintiff's Notice refers to the pendency of the action, her claim and of the current or former employee's opportunity to opt-in to join this action.

Under the FLSA, notice is to be issued only "in appropriate cases," Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169 (1989). Given the common theory of FLSA liability for Plaintiff and the similarly situated hourly non exempt employees, the Court deems notice to the similarly situated current and former non exempt hourly employees at the restaurants managed by the Defendant to be appropriate. Courts have granted court supervised notices in analogous minimum wage cases. The disclosure of a mailing list is a routine component of notice in collective actions. Hoffman-LaRoche, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses... "); Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp2d 504, 515 (S. D. N. Y. 2010) ( employer required to provide employee address information for three years prior to the filing of the action); Pedigo v. 3003 S. Lamar, LLP, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) (same).

As to the content of the notices, a collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffman-LaRoche, 493 U.S. at 170.The Notice must sufficiently inform prospective plaintiffs to enable them to protect their interests. Belcher v. Shoney's Inc., 927 F. Supp. 249, 252 (M.D. Tenn. 1996). Court approved notices prevent "misleading" communications. Hoffman-LaRoche, 493 U.S. at 172.

Plaintiff's proposed notice accurately describes the legal claims in this action. Potential opt-ins are advised that Defendant is defending against the claims and that the employees are not

required to join. The notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. See 29 U.S.C. § 215(a)(3). Plaintiff's proposed Notice was approved by the Honorable Judge Todd Campbell of this Court in Belcher. 927 F. Supp. at 252-254. Yet, excluded from this notice requirement is any employee in foreign countries, but only if that employee "performs all of his [or her] work exclusively within a foreign country." Wirtz v. Healy, 227 F. Supp. 123, 129 (N. D. Ill. 1964).

To maximize notice, the Court agrees with Plaintiff and other Courts that Defendant shall post this Notice prominently at Defendant's restaurant locations where employees congregate and shall distribute the Notices with current employees next regularly scheduled paychecks. See, e.g. Cranney v. Carriage Servs., Inc., 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (ordering notice to be posted in defendants' employee break rooms, e-mailed to employees, publicized in employee newsletter as well as mailed to employees); Johnson v. Am. Airlines, Inc., 531 F.Supp. 957, 964 (N.D. Tex. 1982) (notice ordered to be posted on employee bulletin boards at defendant's flight bases);

The Court concludes that Plaintiff's proposed Notice and Consent Form are fair and accurate, and are approved for distribution.

### 3. Tolling of the FLSA Statute of Limitation

Under its equity jurisdiction, the Court can suspend the applicable federal limitations period "where the interests of justice require vindication of the plaintiff's rights." Burnett v. New York Cent. R. Co., 380 U.S. 424, 428 (1965). This equitable tolling "is read into every federal statute of limitations." Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946). Thus, the statute of limitations in

the FLSA may be equitably tolled. Courts have equitably tolled the statute of limitations to preserve the claims of opts in plaintiffs. See, e.g., Owens v. Bethlehem Mines Corp., 630 F. Supp. 309 (S.D. Va. 1986) (tolling FLSA statute of limitations to account for delay in ruling on motion for notice).

This Court adopts the view articulated by other courts that the statute of limitation for FLSA claims does not cease to run on the claims of any former employees until the date that the former employees actually files his or her form electing to opt-in as a party-plaintiff to this action. See Sperling v. Hoffman-La Roche, Inc., 24 F.3d 463, 469 (3d Cir. 1994) and Bonilla v. Las Vegas Cigar Co., 61 F.Supp. 2d. 1129 (D. Nev. 1999).

In Sperling, the Third Circuit observed that "[w]hen class-action relief is sought pursuant to Section 16(b) of the FLSA, as modified by Section 7 of the Portal to Portal Act, the rule governing the timeliness of opt-in class members who consent to join a class is different. By Section 7 of the Portal to Portal Act, all class members who seek relief on the FLSA must submit affidavits of consent before the statute of limitation applying to their individual claims has run." Id. at 469.

In Bonilla, a collective action under the FLSA, the District Court reviewed the legislative history of the FLSA to conclude that "an action is a collective action under § 216(b) where plaintiffs purport to sue on behalf of themselves and others similarly situated ... Certification and other trappings of Rule 23 class actions are appropriately applied to § 216(b) actions for purposes of case management, **but not for the purpose of establishing the tolling of the statute of limitations, as in the case here ... each plaintiff's action commences on the date on which they filed their consent to suit with the Court.**" Id. at 1138, 1139 (emphasis added).

If necessary, the Court will consider separately any challenge by the Defendant to an employee's claim for application of the judicial equitable tolling doctrine upon consideration of particular facts of the employee's circumstances. See Bonilla, 61 F.Supp. at 1140-41.

An appropriate Order is filed herewith.

**Entered** this the 6th day of September, 2013

William J. Haynes, Jr.
Chief United States District Judge